IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CV-759-FL

| | |
|---|---|
| GREGORY MAURICE LEE, by and through his Guardian, Linda Shelton, ) ) ) Plaintiff, ) ) v. ) ) CITY OF FAYETTEVILLE and JOHN DOES, ) ) ) Defendants. ) ) ) | ORDER |

This matter is before the court defendants' motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 41(b). (DE 16). Plaintiff responded and defendants replied. On December 2, 2016, the court provided the parties notice that intended to convert the motion into one for summary judgment, and directed further briefing. Plaintiff filed a response in opposition to summary judgment and defendants replied. For the following reasons, defendants' motion, converted to one for summary judgment, is granted.

## BACKGROUND

Plaintiff filed this action on August 19, 2016, asserting claims under 42 U.S.C. § 1983 and state tort law, arising from alleged use of excessive force by unnamed John Does, who allegedly are members of the police department of defendant City of Fayetteville ("Fayetteville"), in an incident taking place on November 13, 2012. Defendants filed the instant motion on September 12, 2016, seeking dismissal under Rule 12(b)(6) on the basis that claims against defendants are barred by statute of limitations. In the alternative, defendants argue that plaintiff is barred from bringing the

instant claims against John Does, under Rule 41(b), due to the court's prior dismissal of claims against John Does in a previous action asserting nearly identical claims, Lee v. City of Fayetteville, et al., No. 5:15-CV-638-FL (E.D.N.C.) ("Lee I"). In Lee I, the court entered judgment on August 4, 2016, dismissing the case "without prejudice." (DE 38).

Plaintiff responded to the instant motion on September 30, 2016, asserting inter alia that the statute of limitations was tolled until a general guardian was appointed on his behalf on January 19, 2016. Plaintiff attached to his response, in addition to documents from Lee I, a state court document titled "Letters of Appointment General Guardian," dated January 19, 2016. (DE 19-2). Defendants replied on October 13, 2016, asserting inter alia that plaintiff is not entitled to tolling of the statute of limitations. Defendants attached to their reply, in addition to documents from Lee I, state court documents and correspondence related to guardians acting on behalf of plaintiff, as well as an authenticating affidavit. (DE 20-1 to 20-5).

On December 2, 2016, the court analyzed the issues raised by defendants' motion to dismiss. The court first rejected defendants' arguments that Rule 41(b) provides an independent basis for dismissal of claims against John Does. Turning to defendants' statute of limitations defense, the court noted that the parties had introduced documents outside of the pleadings bearing on the issue of tolling of the limitations period. Therefore, the court provided notice to the parties that it would treat defendants' motion to dismiss as one for summary judgment, and the court gave the parties an opportunity to "present all the material that is pertinent to the statute of limitations defense raised by defendants' motion." (DE 21 at 8-9). The court also previewed several issues raised by the defendants' arguments.

Plaintiff filed a memorandum of law in opposition to summary judgment on December 22, 2016. Plaintiff attaches thereto 1) letters of appointment of general guardian, dated January 19, 2016, and related state court documents; and 2) a copy of a verified complaint filed in Lee I. In reply in support of summary judgment, in addition to referencing documents previously filed, defendant attaches 1) an affidavit of Diana Engel ("Engel"), a forensic technician with the City of Fayetteville police department, with attached police report; and 2) an affidavit of Michael Hardin ("Hardin"), an officer with the police department, with an attached police report.

**STATEMENT OF FACTS**

As pertinent to the instant motion, the undisputed facts and disputed facts viewed in the light most favorable to plaintiff may be summarized as follows. Early in the morning of November 13, 2012, Fayetteville police officers responded to the scene of a reported break-in at the Body-Tapp Gentlemen's Club in Fayetteville. Unnamed police officers apprehended plaintiff at the scene, and during the course of such apprehension plaintiff "sustained a head injury." (Hardin Aff., ¶ 5; Case Supplemental Report (DE 23-2) at 4).[1]

Prior to 7:10 a.m., plaintiff was transported to Cape Fear Valley Medical Center for medical treatment. (Engle Aff., Case Supplemental Report (DE 23-1) at 4). Engel arrived on the scene of Body-Tapp Gentlemen's Club at 7:10 a.m. and took photographs of the scene and lifted fingerprints. (Id. at 4-5). Engel left the scene at 7:58 a.m., and proceeded to Cape Fear Valley Medical Center, where she made contact with another officer at 8:12 a.m., who reported that plaintiff was located in

---

[1] For citations with docket entry numbers specified (DE), page numbers cited are those provided on the court's case management electronic case filing (CM/ECF) system, not the page number specified on the face of the underlying document, if any.

Room 39 in the emergency department of the hospital. (Id. at 6). In her Case Supplemental Report, Engel noted that at that time:

> Contact was made with the suspect, [plaintiff]. [Plaintiff] who [sic] was lying on a bed in the room with a neck brace on; he was coherent and talking. [Plaintiff] was wearing a hospital gown and covered with a sheet. Abrasion type wounds were noted to his left hand and right knee. An abrasion type wound was also noted under and above his left eye.

(Id.). According to Engel:

> It is important that I note in my report whether the subject did speak with me. If I note that a suspect spoke with me, I make a note of that fact to protect against future claims that I failed to document an injury. If the subject is unconscious or otherwise unresponsive I make a note of this as well.

(Engel Aff. ¶ 11). Engel left plaintiff's room at Cape Fear Valley Medical Center at 8:45 a.m. (Engle Aff., Case Supplemental Report (DE 23-1) at 6).

Hardin arrived at Cape Fear Valley Medical Center at 9:30 a.m., and in his Case Supplemental Report, Hardin states:

> I . . . spoke with E.R. Physician SETZER. SETZER advised serious head injury had been sustained and there was hemorrhage. I noted that suspect was alert, responsive, and communicating with doctors. I then departed [Cape Fear Valley Medical Center].

(Hardin Aff., Case Supplemental Report (DE 23-2) at 4). Hardin received a report from another officer at 1:15 p.m. that plaintiff "would be flown to UNC Hospital in Chapel Hill due to the nature of his injuries." (Id.). The next day, November 14, 2012, Hardin was advised that plaintiff "was still in critical condition." (Id. at 5).

On January 31, 2013, Linda Shelton ("Shelton"), plaintiff's sister, filed a verified petition for adjudication of incompetence and application for appointment of guardian or limited guardian in the Superior Court of Orange County, North Carolina. (DE 20-3). In the application, Shelton

4

states that plaintiff is a patient at UNC Hospitals, and that he lacks sufficient capacity to manage his own affairs or to make or communicate important decisions concerning his person, family or property, on the basis of the following:

> Respondent was severely beaten and sustained head injuries in his beating. He has suffered significant brain damage, has undergone multiple surgeries, and has remained hospitalized since November 13, 2012. When he attempts to speak he mumbles incomprehensibly. This mumbling is punctuated with English words or phrases that appear out of context. He is unable to provide responsive answers to questions and primarily responds to questions such as 'do you know where you are?' with 'mmmkay.' Respondent frequently refuses to eat. He is physically uncooperative with nurses and doctors and has violent outbursts. Respondent is confined in a cage-like mesh inclosure surrounding his bed that prevents him from hurting himself or others.

(DE 20-3 at 3). That same date, the Orange County Superior Court set hearing on incompetence to be held February 20, 2013. (Id. at 15). On February 20, 2013, Orange County Superior Court adjudged plaintiff incompetent and ordered that a guardian be appointed by the court. (DE 20-3 at 14). That same date, Shelton filed a verified application for letters of "guardianship of the person," and she signed an "oath of fiduciary." (DE 20-3 at 11, 13). That same date, the Orange County Superior Court issued letters of appointment to Shelton, appointing her as "Guardian of the Person" of plaintiff. (Id. at 10).

On March 17, 2014, attorney Jerry Braswell sent a letter to city attorney for the City of Fayetteville stating "[o]ur office has been retained to represent Gregory Lee who was seriously injured in an altercation with officers of the Fayetteville Police Department, . . . . on or about 18 [sic] November 2012," and requesting an internal investigation report. (DE 20-2).

On October 14, 2015, Shelton filed a verified motion to modify guardianship, in Superior Court of Cumberland County, North Carolina. Therein she requests as follows:

5

> Movant be appointed general guardian so that she can bring legal action on behalf of the Ward [plaintiff]. [Plaintiff] was seriously injured by police officers when he was apprehended for alledgelly [sic] breaking into and entering a store although he was never charged. A civil lawsuit will be filed against the City of Fayetteville. Erika Walker was a female friend of [plaintiff] and since the incident she has had no contact with [plaintiff] or his family. She has not visited [plaintiff] nor provided him with any care or assistance.

(DE 20-3 at 8). On November 3, 2015, Sharon A. Keyes, guardian ad litem for plaintiff, filed a response to the motion to modify, stating:

> Linda Shelton, sister of the ward, makes this motion to modify the guardian of the person to general guardian in order to pursue a lawsuit on behalf of the ward. Linda Shelton has acted as her brother's guardian since 2013. Although I did not meet with [plaintiff], as he was living in a facility in Catawba County, North Carolina, I was able to speak with the Administrator of the facility. She reported that Mr. Lee was nonverbal and unable to understand conversation directed to him. . . . I attempted to speak with other family members prior to the hearing but was not able to contact them. Mrs. Shelton presented as a caring family member and has served as [plaintiff's] guardian without incident since 2013. . . .

(DE 20-3 at 22).

On November 9, 2015, the Superior Court of Cumberland County appointed Shelton "General Guardian" for plaintiff, "upon proper qualification, sufficient bonding and application." (DE 20-3 at 19). The order stated the following findings of fact:

1. That [plaintiff] was seriously injured in an altercation with the Fayetteville police on 13 November 2012.

2. That as a result of said injuries sustained in the altercation [plaintiff] was treated for brain injuries at UNC Hospital in Chapel Hill, North Carolina.

3. That [Shelton] has visited [plaintiff] on numerous occasions while he was at UNC Hospitals and testified that [plaintiff] could not speak coherently and was unable to care for himself.

4. That following said medical treatment [plaintiff] was transported to Hickory Falls Nursing Home located in Catawba County, North Carolina.

6

> 5. That the Court appointed Attorney Sharon Keyes as the guardian ad [l]item who contacted the Hickory Falls Nursing Home and spoke with the administrator who stated that [plaintiff] was unable to speak or verbalize in a manner that he could be understood and needed daily care and attention to carry on his daily functions. That he was incapable of taking care of himself and was mentally incompetent.

(DE 20-3 at 18). That same date, plaintiff, by and through Shelton, filed a verified complaint in Superior Court of Cumberland County, which includes the following allegation: "That the Plaintiff Gregory Lee was beaten about the head and face suffering bruises and sustaining a serious brain injury to the extent that Plaintiff Lee can no longer verbalize or speak coherently and is incapable of taking care of himself." (DE 22-2 at 4). It is also alleged that "the unidentified Police Officers engaged in such excessive and unlawful force that they caused a serious and permanent head injury to the Plaintiff to the extent that the Plaintiff is now mentally incompetent and residing in a nursing care facility." (Id.).

On January 6, 2016, the Superior Court of Cumberland County entered an order stating that Shelton "has failed to qualify as General Guardian on behalf of [plaintiff]," and ordering her to so qualify within 10 days of the date of the order. (DE 20-3 at 17). On January 19, 2016, the Superior Court of Cumberland County issued letters of appointment of general guardian to Shelton. (DE 22-1).

## COURT'S DISCUSSION

A. Standard of Review

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Id.

7

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [fact finder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based

on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.  Analysis

Defendants assert that there is no genuine issue of material fact that plaintiff's action is time-barred. For the reasons stated below, the court agrees.

A three year statute of limitations applies to plaintiff's claims. See N.C. Gen. Stat. § 1-52(5) (assault, battery, and negligence); Love v. Alamance Cty. Bd. of Educ., 757 F.2d 1504, 1506 n. 2 (4th Cir. 1985) (§ 1983 claim premised upon personal injury). For plaintiff's state law claims, "[t]he cause of action accrues [w]hen the wrong is complete." Raftery v. Wm. C. Vick Const. Co., 291 N.C. 180, 184 (1976); see Stahle v. CTS Corp., 817 F.3d 96, 108 (4th Cir. 2016) (noting that alternative accrual rule based upon discovery of injury only applies to "latent injuries" where "the harm is not immediately apparent"). For plaintiff's federal claim, the "action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, Maryland House of Correction, 64 F.3d 951, 955 (4th Cir. 1995).

Under the circumstances of this case, the limitations period began to accrue upon completion of the alleged assault by police officers, at some point prior to 7:10 a.m. on November 13, 2012, before plaintiff was transported to Cape Fear Valley Medical Center. (Engle Aff., Case Supplemental Report (DE 23-1) at 4). The three year limitations period ran from that date and

9

expired on November 13, 2015. Accordingly, plaintiff's action, filed August 19, 2016, is 278 days out of time and barred by the statute of limitations.

Plaintiff raises several issues regarding tolling of the limitations period, which the court addresses in turn.

1.      Tolling Based Upon Filing Lee I

Plaintiff contends the running of the limitations period should be tolled by the filing of her prior action, Lee I, on November 9, 2015, which this court dismissed without prejudice on August 4, 2016. Generally, "[t]he statute of limitations is tolled when suit is properly instituted, and it stays tolled as long as the action is alive." Long v. Fink, 80 N.C. App. 482, 485 (1986) (emphasis in original); see Estrada v. Burnham, 316 N.C. 318, 323 (1986). In this case, plaintiff's suit was not properly instituted against the John Doe defendants because they were never named. See Burcl v. N. Carolina Baptist Hosp., Inc., 306 N.C. 214, 225 n.7 (1982). Therefore, tolling of claims against the John Doe defendants on the basis of filing of suit in Lee I is unwarranted.

As for any claims remaining against defendant Fayetteville,[2] tolling is available from the time of filing of the complaint on November 9, 2015, to the expiration of the post-removal 90-day window for service, on March 8, 2016. See Long, 80 N.C. App. at 485 ("[T]olling stops if the suit is discontinued by operation of law because of the plaintiff's failure to keep the action alive in an

---

[2] In light of the bar to suit against the John Doe defendants plaintiff has no basis on the merits to obtain relief on § 1983 claims against defendant Fayetteville. See Kentucky v. Graham, 473 U.S. 159, 166 (1985) (stating "a governmental entity is liable under § 1983 only when the entity itself is a moving force behind [a] deprivation" of constitutional rights caused by an individual officer); Evans v. Chalmers, 703 F.3d 636, 654 (4th Cir. 2012) (stating that "because we hold that all plaintiffs failed to state predicate § 1983 claims against the individual officers, we must also hold that all plaintiffs have failed to state supervisory liability [and] Monell liability" claims). This provides an additional alternative ground for summary judgment on plaintiff's § 1983 claims against defendant Fayetteville in this matter.

authorized manner after the original summons has lost its efficacy by not being served within the time allowed.") (emphasis added); see Lee I, No. 5:15-CV-638-FL (Order, March 30, 2016, at 7) ("Plaintiff's 90-day window closed on or about March 8, 2016; he failed to serve process within the allotted time."). Therefore, for claims against defendant Fayetteville, filing of suit in Lee I serves to toll the limitations period for a period of 120 days. However, even with such tolling, plaintiff's claims against defendant Fayetteville, filed, on August 19, 2016, still are 158 days out of time.

Plaintiff argues nonetheless that the statute of limitations as to claims against defendant Fayetteville should be tolled additionally during the time period that the court in Lee I extended the time for service, 90 additional days from March 30, 2016, to June 28, 2016. In addition, plaintiff suggests that the statute of limitations should be tolled during the time period that the court in Lee I was considering the propriety of service, from June 28, 2016, to August 4, 2016. Plaintiff, however, cites no authority, and the court finds none, for extending tolling during these periods of time, particularly where the court determined in Lee I that plaintiff failed to properly effectuate service. See Lee I, No. 5:15-CV-638-FL (Order August 4, 2016, at 4); Long, 80 N.C. App. at 485.

Even taking into account tolling during the entirety of Lee I, however, for plaintiff's claims against defendant Fayetteville, those claims would still be out of time. Lee I, in its entirety spanned a period of 269 days, from November 9, 2015, to August 4, 2016. Given that plaintiff was 278 days out of time in filing suit in the instant matter, tolling for 269 days leaves plaintiff still nine days out of time for plaintiff's claims against defendant Fayetteville.[3]

---

[3] Plaintiff suggests in his opposition to defendant's motion that a period of 48 days should be added to his time for filing suit, after August 4, 2016, reflecting the time between May 11, 2016, and June 28, 2016, when the issue of proper service was pending before the court. (DE 19 at 6-7). But, the court has already taken into account the time period between May 11, 2016, and June 28, 2016, when considering the effect of tolling for the entire span of Lee I. Thus,

11

In sum, plaintiff must rely upon additional grounds for tolling to render the instant action timely.

2.   Disability

Plaintiff argues that the running of the statute of limitations should be tolled due to his mental incompetency, from the time of the alleged assault, on November 13, 2012, to the date Shelton was appointed as his general guardian, on January 19, 2016. Defendants assert that plaintiff was not incompetent at the time of the alleged assault, and they suggest that plaintiff's disability ceased, at the latest, once Shelton was appointed guardian of the person of plaintiff on February 20, 2013.

"A cause of action accrues to an injured party so as to start the running of the statute of limitations when he is at liberty to sue, being at that time under no disability." Raftery v. Wm. C. Vick Const. Co., 291 N.C. 180, 183 (1976) (quotations omitted). Accordingly, a person who is "under a disability at the time the action accrued may bring his or her action within the time limited [by statute of limitations], after the disability is removed." N.C. Gen. Stat. § 1-17(a) (emphasis added); see N.C. Gen.Stat. § 1-20 (titled "Disability must exist when right of action accrues"); see also Leonard v. England, 115 N.C. App. 103, 106 (1994) (examining whether "alleged sexual, physical, and emotional abuse rendered plaintiff 'incompetent' thereby tolling the statutes of limitations so that summary judgment for defendant was improper"). For tolling in this manner, a disability must exist when the right of action accrues, because "when the statute of limitations has

---

adding 48 additional days would amount to not only tolling the limitations period, but also extending it.

begun to run no subsequent disability will interfere with it." Battle v. Battle, 235 N.C. 499, 502 (1952); see Nicholas v. Furniture Co., 248 N.C. 462, 471 (1958) (same).

Thus, the parties raise an issue as to whether plaintiff was incompetent at the time his claims accrued, upon his alleged assault by police officers prior to 7:10 a.m. on November 13, 2012. Evidence in the record is insufficient to permit an inference that plaintiff was incompetent at the moment of alleged assault by police officers prior to 7:10 a.m. on November 13, 2012. Rather, the evidence establishes only that plaintiff was rendered incompetent sometime during the time he was at Cape Fear Valley Medical Center, or thereafter, as confirmed by reports of plaintiff's condition at UNC hospital.

In particular, plaintiff presents no evidence of his incompetency at the scene of the alleged assault or upon his arrival at Cape Fear Valley Medical Center. Rather, evidence regarding plaintiff's condition at that time includes Engel's Case Supplemental Report, in which she notes:

> Contact was made with the suspect, [plaintiff]. [Plaintiff] who [sic] was lying on a bed in the room with a neck brace on; he was coherent and talking. [Plaintiff] was wearing a hospital gown and covered with a sheet. Abrasion type wounds were noted to his left hand and right knee. An abrasion type wound was also noted under and above his left eye.

(Id.) (emphasis added). According to Engel:

> It is important that I note in my report whether the subject did speak with me. If I note that a suspect spoke with me, I make a note of that fact to protect against future claims that I failed to document an injury. If the subject is unconscious or otherwise unresponsive I make a note of this as well.

(Engel Aff. ¶ 11). Engel left plaintiff's room at Cape Fear Valley Medical Center at 8:45 a.m. (Engle Aff., Case Supplemental Report (DE 23-1) at 6). In addition, Hardin arrived at Cape Fear Valley Medical Center at 9:30 a.m., and Hardin states in his Case Supplemental Report:

> I . . . spoke with E.R. Physician SETZER. SETZER advised serious head injury had been sustained and there was hemorrhage. I noted that <u>suspect was alert, responsive, and communicating with doctors</u>. I then departed [Cape Fear Valley Medical Center].

(Hardin Aff., Case Supplemental Report (DE 23-2) at 4) (emphasis added).

In the chronology of this case, the first evidence of incompetency concerns plaintiff's condition while at UNC Hospitals and thereafter. In particular, Hardin received a report from another officer at 1:15 p.m. on November 13, 2012, that plaintiff "would be flown to UNC Hospital in Chapel Hill due to the nature of his injuries." (Id.).

Then, in her January 31, 2013, verified petition for adjudication of incompetence, Shelton states that plaintiff is a patient at UNC Hospitals, and that "he . . . lacks sufficient capacity to manage his own affairs or to make or communicate important decisions concerning his person, family or property," on the basis of the following:

> Respondent was severely beaten and sustained head injuries in his beating. He has suffered significant brain damage, has undergone multiple surgeries, and has remained hospitalized since November 13, 2012. When he attempts to speak he mumbles incomprehensibly. This mumbling is punctuated with English words or phrases that appear out of context. He is unable to provide responsive answers to questions and primarily responds to questions such as 'do you know where you are?' with 'mmmkay.' Respondent frequently refuses to eat. He is physically uncooperative with nurses and doctors and has violent outbursts. Respondent is confined in a cage-like mesh inclosure surrounding his bed that prevents him from hurting himself or others.

(DE 20-3 at 3). Later, upon further adjudication of guardianship, the Superior Court made the following findings of fact pertaining to plaintiff's condition:

1. That [plaintiff] was seriously injured in an altercation with the Fayetteville police on 13 November 2012.

2. That as a result of said injuries sustained in the altercation [plaintiff] was <u>treated for brain injuries at UNC Hospital in Chapel Hill, North Carolina</u>.

> 3. That [Shelton] has visited [plaintiff] on numerous occasions <u>while he was at UNC Hospitals and testified that [plaintiff] could not speak coherently and was unable to care for himself</u>.

(DE 20-3 at 18) (emphasis added).[4] In this manner, the state court findings of incompetency concerned plaintiff's condition while he was at UNC Hospitals, where plaintiff was treated for brain injuries.

Plaintiff points to an allegation in his complaint for additional support for his contention that he was incompetent at the time of the alleged assault, particularly the allegation that plaintiff "was beaten about the head and face suffering multiple bruises and sustaining a serious injury to the extent that Plaintiff can no longer verbalize or speak coherently and is incapable of taking care of himself." (Compl. ¶ 28). This allegation does not create a genuine issue of fact, however, for two reasons. First, because it is not verified, the complaint is not evidence that creates a genuine issue of fact.[5] Second, even if the statement at paragraph 28 of the complaint in this matter considered to be a verified allegation, plaintiff's statement at paragraph 28 of the complaint does not resolve the factual issue as to the timing of plaintiff's incompetency. Rather, as to competency, it states only that

---

[4] Defendants do not object to consideration of the state court findings of fact as to plaintiff's incompetency in determining the propriety of summary judgment in this case. (See DE 23 at 5 ("Defendants do not dispute for the purposes of this summary judgment proceeding that Mr. Lee's condition quickly degraded, and the [sic] he eventually became disabled.")). For purposes of the instant motion, the court presumes without deciding that the state court findings of fact are "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

[5] Generally, the court must accept on summary judgment factual allegations in a verified complaint, if such allegations are "based upon [affiant's] own personal knowledge and set forth specific facts admissible in evidence." <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff filed a complaint, verified by Shelton, in <u>Lee I</u> containing the identical allegation. (See <u>Lee I</u>, No. 5:15-CV-638-FL, DE 1-2 at 16). No such verification, however, accompanies the complaint in the instant matter.

plaintiff presently "<u>can no longer</u> verbalize or speak coherently and <u>is incapable</u> of taking care of himself." (Id.) (emphasis added).

In sum, the evidence does not permit an inference that plaintiff was incompetent at the time of the alleged assault by police officers, but rather only that he became incompetent at some point while at Cape Fear Valley Medical Center and UNC Hospitals. Therefore, plaintiff has failed to demonstrate a genuine issue of fact as to whether he was incompetent at the time the action accrued, permitting tolling of the limitations period.

3. Removal of Disability

In the alternative, plaintiff fails to demonstrate a genuine of issue of material fact as to whether his alleged disability was removed on February 20, 2013, upon appointment of Shelton as guardian of the person of plaintiff, rather than on January 19, 2016, upon appointment of Shelton as general guardian, as he asserts.[6]

As noted above, North Carolina provides that a person who is "under a disability at the time the action accrued may bring his or her action within the time limited [by statute of limitations], after the disability is removed." N.C. Gen. Stat. § 1-17(a). "[A] person is under a disability if the person . . . is incompetent as defined in [N.C. Gen. Stat. §] 35A-1101(7) or (8)." Id. § 1-17(b). "'Incompetent adult' means an adult or emancipated minor who lacks sufficient capacity to manage the adult's own affairs or to make or communicate important decisions concerning the adult's person, family, or property . . . ." N.C. Gen. Stat. § 35A-1101(7).

---

[6] This alternative determination provides an independent basis for finding time barred plaintiff's claims against the John Doe defendants. It may not be determinative regarding plaintiff's remaining claims against defendant Fayetteville, depending on the extent of tolling due to filing of Lee I, discussed above in section 1.

16

For purposes of statute of limitations, "the statute begins to run upon the appointment of a guardian or upon the removal of [the] disability as provided by G.S. s 1-17, whichever shall occur first." First-Citizens Bank & Trust Co. v. Willis, 257 N.C. 59, 62 (1962); see Matter of Estate of Owens, 117 N.C. App. 118, 121 (1994) ("Where a guardian is appointed, the limitations period begins to run from the time of the appointment."); Fox v. Health Force, Inc., 143 N.C. App. 501, 507 (2001) ("Once [individual's] guardian was appointed to represent her interests, the limitation period began to run from the time of the appointment.").

In this case, on February 20, 2013, Orange County Superior Court adjudged plaintiff incompetent and ordered that a guardian be appointed by the court. (DE 20-3 at 14). That same date, Shelton filed a verified application for letters of "guardianship of the person," and she signed an "oath of fiduciary." (DE 20-3 at 11, 13). That same date, the Orange County Superior Court issued letters of appointment to Shelton, appointing her as "Guardian of the Person" of plaintiff. (Id. at 10). Accordingly, plaintiff's disability was removed, at the latest, on February 20, 2013, upon appointment of Shelton as guardian of the person.

Plaintiff suggests, nonetheless, that his disability was not removed until Shelton was appointed as general guardian, on January 19, 2016, because Shelton was not qualified to bring suit as a guardian of the person. "[I]t is ordinarily desirable that an incompetent's litigation should be conducted by a general guardian who, being in control of all his ward's affairs, can relate the effect of the litigation to the incompetent's entire estate." Hagins v. Redevelopment Comm'n of Greensboro, 275 N.C. 90, 104 (1969). But, for statute of limitations purposes, the determining factor is not the appointment of a "general guardian" but simply a "guardian." Willis, 257 N.C. at 62 (1962); Matter of Estate of Owens, 117 N.C. App. at 121. While a guardian of the person is

17

incapable of bringing suit on behalf of an incompetent person, a "guardian of the person may give any consent or approval that may be necessary to enable the ward to receive medical, legal, psychological, or other professional care, counsel, treatment, or service[.]" N.C. Gen. Stat. § 35A-1241(a)(3).[7]

Thus, as duly appointed guardian of the person, starting in February 20, 2013, Shelton was authorized to manage fully the affairs of plaintiff, including retaining legal counsel on behalf of plaintiff's interests. Shelton, in fact, "served as plaintiff's guardian without incident since 2013," (DE 20-3 at 22), and she retained counsel in 2014 on behalf of plaintiff. (DE 20-2).[8] Accordingly, if any disability acted to toll the limitations period due to plaintiff's incompetence, such disability was lifted for purposes of statute of limitations no later than February 20, 2013.

A contrary rule would lead to absurd results. If the limitations period could be tolled to the extent plaintiff suggests, the statute of limitations for any action involving an incompetent person could be extended indefinitely, dependent solely on the delay of the guardian of the person securing an appointment of a general guardian. Plaintiff cites no authority for extending the limitations period in this manner, and the court has found none. Accordingly, the court rejects plaintiff's suggestion

---

[7] Moreover, securing a general guardian appointment was not the exclusive avenue for seeking legal recourse against defendants on behalf of plaintiff as an incompetent person. Suit also could have been brought by a next friend or a guardian ad litem. See Hagins, 275 N.C. at 103; Teele v. Kerr, 261 N.C. 148, 150 (1964); Fox, 143 N.C. App. at 506; see, e.g., Jefferys v. Tolin, 90 N.C. App. 233, 235 (1988) ("Where a guardian ad litem is appointed for a minor, the limitation period begins to run from the time of the appointment.").

[8] Defendants proffer additional evidence of correspondence by an attorney on December 15, 2012, referencing the "beating of Gregory Lee on November 13, 2012." (DE 20-1 at 3). Because this correspondence does not reference Shelton or retention by plaintiff, this document alone does not in itself constitute evidence demonstrating removal of plaintiff's alleged disability. Viewed in the light most favorable to plaintiff it is merely a request for public information regarding plaintiff by a private individual.

that the limitations period started running only upon appointment of Shelton as general guardian on January 19, 2016.

In sum, plaintiff has failed to demonstrate a genuine issue of material fact as to the expiration of the statute of limitations in this matter. Therefore, defendants are entitled to summary judgment as a matter of law.

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss (DE 16), converted to a motion for summary judgment, is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 24th day of May, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge